**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Genaro De Santis,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-20-00543-PHX-DJH<br><br>**ORDER** |

Plaintiff, Michael Genaro De Santis's ("Plaintiff") Applications for Disability Insurance benefits and Supplemental Security Income benefits by the Social Security Administration ("SSA") under the Social Security Act were denied. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now considers Plaintiff's Opening Brief (Doc. 20, "Pl. Br."), Defendant SSA Commissioner's Response Brief (Doc. 21, "Def. Br."), and Plaintiff's Reply Brief (Doc. 22, "Reply"). The Court has reviewed the briefs and Administrative Record and affirms the Commissioner's decision.

**I.    Background**

Plaintiff, who is currently 61 years old, formerly worked as a vacuum cleaner repairer and assistant manager in retail sales. (Doc. 20 at 1) (R. at 820). He has not been employed since December 18, 2012, when he was terminated from employment.[1] (R. at 623). On September 22, 2014, Plaintiff filed an application for disability and disability

---

[1] Plaintiff also described that "I consider myself retired" from employment. (R. at 821).

insurance benefits and supplemental security income alleging disability since December 18, 2012.[2] (R. at 20, 342-57, 475). In his Disability Report of September 24, 2014, Plaintiff listed the following physical impairments: right shoulder implant, left ankle shattered, and neuropathy of both feet.[3] (R. 393). Regarding his former employment, Plaintiff "helped put away orders, large boxes, fixed German vacuum and other vacuums and sold vacuums." (*Id*. at 395). His employment activity included that he could walk 3 hours, stand 4 hours, sit 2 hours stoop 2 hours, write, type, or handle small objects for 2 hours and reach 2 hours. (*Id.*) He stated the heaviest and most frequent weight he lifted was 10 pounds. (*Id.*)

Plaintiff's application was denied as the ALJ found that he was not disabled. (R. at 166-177). However, the Appeals Council granted Plaintiff's request for review and remanded the case back to the ALJ for a second hearing. (R. at 184-88). The Appeals Council directed the ALJ to "[o]btain supplemental evidence from a vocational expert to determine whether the claimant has acquired any skills that are transferrable with little or any vocational adjustments to other occupations." (R. at 57). The ALJ convened that hearing on November 15, 2018 and determined again, that Plaintiff was not disabled. (R. 20-36). The Appeals Council denied Plaintiff's request for review, resulting in the Commissioner's final decision of non-disability. (R at 1-8). Plaintiff filed his complaint pursuant to 42 U.S.C. § 405(g) seeking to reverse the Commissioner's finding.

## II.   Legal Standard

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Commissioner's disability determination may be set aside only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*,

---

[2] Plaintiff's brief cites documents 93-4 and 475, asserting that the ALJ did not acknowledge an amended onset date of April 1, 2013. (Doc. 20 at 2). Yet, documents 93-4 are silent as to his onset date and 475, authored by Plaintiff's counsel states "[t]he claimant is a 57-year-old male who alleges an onset date of December 18, 2021."

[3] Plaintiff also listed mental conditions but states "his appeal focuses on ["his'] physical impairments." (Doc. 20 at 4). Thus, the Court will focus its' review accordingly.

495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled under the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically considered disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

### III.     Analysis

Plaintiff's Brief raises the following issues: 1) the ALJ committed materially harmful error by finding Plaintiff's right shoulder impairment was not severe or a medically determinable impairment; 2) the ALJ erred by giving treating physicians, Dr. Kagie's and Dr. Bailie's assessments "little weight" and giving the agency reviewer assessments

"significant weight," and 3) the ALJ erred by not providing specific, clear and convincing reasons for rejecting Plaintiff's symptom testimony.

### 1. Did the ALJ error in the step-two analysis by omitting his right shoulder impairment

As an initial matter, Plaintiff supports his claim with an understanding that the vocational expert ["VE"] concluded that "[his] symptom testimony would preclude the ability to sustain work" (Doc. 20 at 2 ), and that his "limitations congruent . . . with [his treating physicians] would make it impossible to perform any sustained work." (*Id*.) Yet, at the hearing, the VE testified that according to Plaintiff's own description of his prior employment, his work was actually, "light" rather than "medium" work because the most weight he lifted at any time was 10 pounds.[4] (R. at 58-61).  The VE testified that there were light jobs available such as housekeeping and unskilled cashier.  (R. at 61, 63).  Thus, the ALJ considered Plaintiff's  prior work "as actually performed" to his residual functional capacity and found that he is able to perform light work "because the job as performed individually or as a composite job does not exceed the claimants residual functioning capacity."  (R. at 35-36).  The ALJ did not error in so finding.

At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). The claimant bears the burden of proof at this point in the analysis. *See Tackett*, 180 F.3d at 1098. The ALJ found that "individually or in combination" the medical evidence does not document impairments of listing level severity." (R. at 25). The record reflects that in 1998, Plaintiff had a right shoulder replacement after being electrocuted in a swimming pool. In 2004 he had follow-up hemiarthroplasty surgery.  In September 2015, he fell in a casino and fractured his left shoulder.  (R. at 972).  Plaintiff correctly asserts that the ALJ omitted any discussion of his right or left shoulders at step-two. Although the ALJ erred in not including the purported shoulder conditions, the error is harmless because elsewhere in the opinion

---

[4] Of note, the VE testified that the vacuum repair  "DOT 723.381-014" and associated "DLU" work and skill regulations had not been updated since 1977 and he observed the materials used in the industry have obviously changed since then. (R. at 59).

the ALJ discusses, at length, Plaintiff's right and left shoulder conditions and its' impact on his ability to perform light work. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).[5]

### 2. Did the ALJ error in evaluating the medical opinions

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among their sources. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, "more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant." *Id.* This is so because treating physicians have the advantage of in-person interaction and typically a longer history of treatment than a claimant's other doctors, and their "subjective judgments . . . are important, and properly play a part in their medical evaluations." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). An ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester*, 81 F.3d at 830–31). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* An ALJ meets this standard by "setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

#### a.  Dr. Bailie

The ALJ correctly observed that it had been 10 years since Plaintiff was last treated or examined by Dr. Bailie. (R. at 27). Dr. Bailie performed Plaintiff's right shoulder hemiarthroplasty surgery in 2004. (R. at 852-53). Plaintiff returned to Dr. Bailie in 2015 solely for his disability case. (*Id.* at 781) ("He is essentially coming in today because he was told to file for disability, and he needed to be checked."). The ALJ compared Plaintiff's

---

[5] Although not argued by Plaintiff, the ALJ also made findings related to his ankle and foot conditions. *See* (R. at 28).

x-rays in 2010 and 2013, which showed no significant changes with Dr. Bailie's 2004 x-ray showing bone resorption along the humerus "[which] it is not leading to any instability patterns and is of no clinical consequence." (*Id*. at 782). Dr. Bailie also found that Plaintiff "has limited range of motion of the shoulder . . . no real palpable tenderness . . . and he has weakness of the rotator cuff." (*Id*. at 781). Dr. Bailie observed that from Plaintiff's 2005 examination, "he is certainly worse but not as bad as I would expect." (*Id*. at 782) The ALJ observed that Dr. Bailie relied heavily on Plaintiff's "subjective complaints and reflects a transient point in time that is not corroborated by the remainder of the objective findings and other opinion evidence." (*Id*. at 27). The ALJ also noted that Dr. Bailie observed Plaintiff's right shoulder condition predates 2005, while Plaintiff was fully employed. Given that Dr. Bailie, does not necessarily meet the definition of a treating physician having not examined Plaintiff between 2005 and 2014, and the medical record during that time include additional and inconsistent opinions, the ALJ's reasons for rejecting his opinion are specific and legitimate. *See* 20 C.F.C. § 404.1527 ("Treating source means your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an *ongoing* treatment relationship with you.")(emphasis added). In giving Dr. Bailie's opinion little weight, the ALJ did not err.

          **b.**     **Dr. Kagie**

The ALJ gave treating physician Dr. Kagie's opinion little weight. (R. at 30-31). The ALJ noted that Dr. Kagie completed a medical source statement in November 2018 wherein she opined that Plaintiff "could lift 20 pounds rarely and 10 pounds occasionally . . . [h]e can rarely reach, push, pull or finger but can occasionally grasp with the right upper extremity and can rarely finger but can occasionally reach grasp, push and pull with the left upper extremity," carry 10 pounds rarely and less than 5 pounds occasionally," and that he can rarely squat, crawl, climb or reach. (R. at 1257-60). The ALJ gave Dr. Kagie little weight as "the opinion is generally inconsistent with the limitations opined [sic] are inconsistent with the medical evidence of record. (R. at 31). Notably, Plaintiff states that he "does not rely on the assessment by treating doctor J. Carvel Jackson, D.O." because it

does not contain treatment records. (Doc. 20 at 5 n.4.) The Court observes that Dr. Kagie's assessment of his shoulder limitations are similarly unsupported by treatment records.[6] Rather, Dr. Kagie's records predominantly include referrals to and from Plaintiff's mental health, and substance use treatment providers and discuss intermittent foot and rib injuries. There is one repeated entry, without explanation, of Plaintiff's right shoulder pain dated March 19, 2014, in Dr. Kagie's notes. (R. at 901). Beyond that, Dr. Kagie's records are sparse as to his shoulder and foot conditions. The ALJ did not error in giving Dr. Kagie's opinion little weight.

Indeed, the record is replete with inconsist opinions by Plaintiff's treating and examining physicians. In April 2013, Dr. Werrell, who's opinion the ALJ gave partial weight, noted that Plaintiff's right shoulder abduction and flexion are limited to 45 degrees and his external rotation and internal rotation are severely limited on the right. (R. at 629--31). Dr. Palmer's January 2015 evaluation, which the ALJ also gave partial weight, noted that Plaintiff had an average right shoulder pain intensity of "6/10" and rarely "10/10" (R. at 829-31). Dr. Palmer also stated that Plaintiff is unable to raise the right shoulder at or above shoulder level and that he "[m]oves slowly and has end point pain in all measured movements." (*Id*.) Dr. Werrell found no lifting or carrying limitations, yet he opined that Plaintiff's conditions would impose limitations for 12 continuous months. (R. at 629-31). While Dr. Palmer indicated that Plaintiff could only occasionally lift 10 pounds, and less than 10 pounds frequently. (R. at 834). Plaintiff told Dr. Palmer that he needs assistance preparing meals and performing household chores. (*Id*.) And, Dr. Palmer also found that Plaintiff's conditions would impose limitations for 12 continuous months. (*Id*. at 834). The ALJ did not error in giving these conflicting opinions partial weight.[7]

---

[6] *See* R. 973, opinion of Howard H. Johnson, M.D. ("[h]is [left] shoulder is not a problem . . . [a]ll he needs to do is be sure to not fall again, try not to use his arm too soon and follow my instructions and his shoulder should return to normal within two weeks.").

[7] As another example, a January 2015 Psychological Evaluation notes that Plaintiff states "I can't lift my arm without moving my body," yet, in that same evaluation he claimed being capable of performing many domestic duties. (R. at 818, 822).

Indeed, the ALJ noted that Plaintiff presented with some limited range of motion in the right shoulder, but no significant changes were noted in the 2013 x-rays compared to those of 2010 which were taken while the claimant was still employed. The ALJ noted that the 2013 x-ray revealed similar chronic, stable postop shoulder change as in 2010. This observation permeates the ALJ's finding because it is supported by the medical record, other source opinions and Plaintiff's own statements. Further, the ALJ observed that the "claimant reported that he is able to perform most of his activities of daily living unassisted." (*Id.*)  Finally, the ALJ reasonably observed that Plaintiff was employed through December 2012 and he self-reported lifting 10 pounds frequently. The ALJ determined that these shoulder limitations were more consistent with Drs. Hirsch and Roberts' opinions.  In February 2015 Dr. Hirsch found that Plaintiff could frequently lift 10 pounds and occasionally lift 20 pounds; walk six-hours in an eight-hour workday, and push, pull and lift within the weight limits. (R. at 123-4) . Dr. Hirsch also found postural limits related to Plaintiff's right shoulder movement pain. (*Id.*)  In June 2015 Dr. Roberts made substantially similar findings including that Plaintiff had right hand sensation and right shoulder movement pain. (R. at 141-3). These opinions are supported by the objective medical record and the ALJ did not error in giving them significant weight.

### 3. Did the ALJ provide specific, clear and convincing reasons for rejecting Plaintiff's symptom testimony

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). If the claimant presents such evidence then "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281

1. (9th Cir. 1996)). This is the most demanding standard in Social Security cases. *Id*. at 1015. "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

The ALJ found that Plaintiffs "medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, his statements concerning intensity, persistence and limiting effects" are inconsistent with the record. (R. at 35). The ALJ based this conclusion on the objective medical record and on the Plaintiffs own statements. (*Id*) The ALJ acknowledged that Plaintiff had limited range of motion in his right shoulder due to a prior right shoulder implant surgery. The record does show that Plaintiff sought treatment and rehabilitation in 2013 for right shoulder pain and that he reported that he cannot lift his right shoulder above his waist, and at times, above shoulder level, or that he cannot lift his arm without moving his body. (R. at 818). Yet, the ALJ observed that in November 2013, Plaintiff's self-reported activities of daily living and pain management are inconsistent with his subjective complaints because Plaintiff has no problem preparing meals, he washes clothes, folds them, and washes dishes. (R. at 34, 410-11). He also drives his children to school and picks them up, drives them to appointments, walks and goes outside daily. (R. at 411, 435). In contradiction, Plaintiff told Dr. Werrell that he does not drive and that he does not perform housework. *See* (R. at 629-31). Regarding Plaintiff's pain symptoms, the ALJ noted that the medical records in January 2015 show Plaintiff no longer sought pain management nor was he taking his pain medication, rather he was "dealing with the pain." (R. at 28). And, most recently, Plaintiff testified that he was taking Ibuprofen for his pain management. (R. at 51). Throughout the ALJ's decision, he gave specific clear and convincing reasons for rejecting Plaintiff's

/ / / / /

/ / / / /

/ / / / /

- 9 -

1  symptom testimony.  *See Smolen,* 80 F.3d at 1281.

2  Accordingly,

3  **IT IS ORDERED** that the decision of the Commissioner is **AFFIRMED**. The
4  Clerk of Court is directed to enter judgment accordingly.

5  Dated this 9th day of August, 2021.

```
                                    Honorable Diane J. Humetewa
                                    United States District Judge
```